IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VERSÉA HOLDINGS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>GS LABS, and GABE SULLIVAN,<br><br>Defendants. | 8:22CV414<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the plaintiffs' motion for a change of venue, Filing No. 27. This is an action for breach of contract. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

I.   BACKGROUND

Plaintiff Verséa Holdings, Inc. ("Verséa") is a Florida pharmaceutical company that is a wholesale distributor of COVID-19 tests. Defendant GS Labs, which was founded by Nebraska resident defendant, Gabe Sullivan, is a Nebraska limited liability company that performs COVID-19 testing. Plaintiff Verséa originally sued the defendants for breach of contract in in the Circuit/County Court for Hillsborough County, Florida state court, alleging they failed to pay for COVID-19 tests that Verséa shipped to GS Labs in Omaha, Nebraska. It alleges that GS Labs contacted Verséa and ordered 30,000 COVID-19 tests, but failed to pay for those tests, resulting in a balance of $547,000. It seeks recovery for breach of contract, unjust enrichment, quantum meruit, and equitable enforcement of attorney's fees and costs against the defendants.

The defendants removed the action to the United States District Court for the Middle District of Florida ("Florida District Court"). Filing No. 1, Complaint and Notice of

Removal. Verséa did not oppose Defendants' removal of the lawsuit to federal court. Filing No. 27-1 at 3, Plaintiff's Brief. Defendants then moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to Nebraska. Filing No. 12, Motion to Dismiss or Transfer. The Florida District Court granted the motion, finding that Verséa failed to "establish that [Defendants have] sufficient minimum contacts with the State of Florida to satisfy due process of law[.]" Filing No. 13, Transfer Order. The Florida District Court cited reasons stated in the defendants' motion in support of its decision. *Id.* In the motion submitted to the Florida District Court, the defendants acknowledged that the plaintiff opposed the motion to dismiss or transfer. Filing No. 12 at 15. Thereafter, the plaintiff filed a motion to vacate the transfer order, arguing it had not been served with notice of the motion. Filing No. 27-3 at 20–26, Ex. C, Motion to Vacate. The Florida District Court denied the motion, finding that it had been stripped of jurisdiction upon completion of the physical transfer of the case file to the transferee forum. *Id.* at 28–29, Ex. D, Order.

Verséa now moves to transfer the action back to Florida, arguing the Florida District Court's ruling was based on a misrepresentation that the motion had been served on the plaintiff, when it had not.[1] It argues that the ruling was based on an assumption

---

[1] Verséa contends in the present motion that the defendants "procured the transfer . . . by way of a fraudulent misrepresentation," and "surreptitiously filed" the transfer motion without serving the plaintiff, while certifying they had done so. Filing No. 27 at 1, Motion; Filing No. 27-1 at 1, Plaintiff's Brief. Defendants contend the certification of service was a scrivener's error. Filing No. 29 at 5, 14, Defendants' Brief. The record shows that the pleading had not been served on Plaintiff's counsel through the Court's electronic filing system, though the defendants believed that it had. Filing No. 30-3, Ex. C, Declaration of Jordan W. Adam, Ex. 1, online docket information. The record also shows Plaintiff's counsel had not filed a notice of appearance at the time the motion was filed, though the docket sheet lists Mr. Cittadino as Verséa's counsel of record and lists his email address. *Id.* Verséa was aware the of Defendants' intent to file a motion to dismiss or transfer and the defendants were aware (and informed the Florida District Court) that Plaintiff opposed it. The Court need not address these contentions in light of its finding that venue is proper in this district. The Court has considered the plaintiff's evidence and arguments and finds that those submissions would not have made a difference to the Florida District Court's determination.

that the motion was unopposed. It claims it was denied the opportunity to respond and asserts that its response would have demonstrated that the Middle District of Florida was the proper forum because Defendants solicited the plaintiff's business, knowing the company was based in Florida. Verséa argues that defendants have sufficient minimum contacts in Florida to justify the exercise of personal jurisdiction there.

In support of its motion to the Florida District Court, the defendants presented evidence that GS Labs is a Nebraska limited liability company with its principal place of business, as well as its registered agent, located in Omaha, Nebraska. Filing No. 12 at 17–20, Ex. A, Declaration of Gabriel M. Sullivan. Defendant GS Labs has no business locations in Florida. *Id.* It does not own or lease any real or personal property in Florida. *Id.* It has no offices, employees, or agents in Florida. *Id.* Nor has GS Labs ever sold any products in Florida, had a telephone number in Florida, or opened a bank account in Florida. *Id.* No GS Labs employee, including Defendant Sullivan, ever traveled to Florida for the purpose of conducting business on behalf of GS Labs. *Id.* at 19. However, there is evidence that GS Labs maintained, or recently maintained, a testing site in Orlando for five weeks in November and December 2021. Filing No. 27-1 at 3.

In or around January 2022, Sullivan learned that Verséa was a wholesale distributor of COVID-19 tests and called Verséa from Nebraska to inquire about a potential purchase of COVID-19 tests. *Id.* at 2. GS Labs was not carrying on any business activities in Florida and were not soliciting business in Florida at that time. *Id.* at 3. Defendant Sullivan understood that Verséa was located in Florida and that the Verséa employee with whom Mr. Sullivan spoke, was working for Verséa in Florida. *Id.* at 2–3. Verséa then shipped COVD-19 tests to GS Labs in Omaha, Nebraska. *Id.* at 3.

Defendants never entered into any written contracts or agreements with Verséa, nor did Defendants ever sign or submit any purchase orders to Verséa with respect to the COVID-19 tests. *Id.* Sullivan thereafter engaged in additional phone and written correspondence with Verséa while in Nebraska. *Id.*

II.   LAW

Fed. R. Civ. P. 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. The Fourteenth Amendment's Due Process Clause limits a state's power to exercise jurisdiction over a defendant. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Due process requires that a defendant have sufficient "minimum contacts" with the forum state that are more than random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985); *International Shoe Co.*, 326 U.S. at 316. "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003). "The primary focus of [the courts'] personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017); *see Walden v. Fiore*, 571 U.S. 277, 284 (2014) (stating "[w]e have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Walden*, 571 U.S. at 285 (quoting *Rush v.*

4

*Savchuk*, 444 U.S. 320, 332 (1980)).

There are two ways in which a federal district court may obtain personal jurisdiction over a defendant: general jurisdiction and specific jurisdiction.  See *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.  General personal jurisdiction may be exercised over a defendant when the defendant is "essentially at home" in the forum state. *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 924. In contrast, "'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).; *see also Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984).

"In determining whether personal jurisdiction is present, a court must consider a variety of interests, including 'the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 263 (quoting *Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 92 (1978)). "But the 'primary concern' is 'the burden on the defendant.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* The bare fact that a party contracts with a distributor in a certain state "is not enough to establish personal jurisdiction in the State." *Id.* at 268. "The forum state does not exceed its powers under

5

the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980) (noting "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.") However, "a defendant placing a product into the stream of commerce, without more, does not constitute an act purposefully directed toward the forum state." *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 376 (8th Cir. 1990).

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought, "[f]or the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

III.   DISCUSSION

Although the Florida District Court's order transferring the case was not lengthy, it incorporated the rationale set out in the defendants' motion to transfer. This Court has considered the plaintiff's submissions and agrees with the Florida District Court that Florida's exercise of personal jurisdiction over these defendants would not satisfy the requirements of due process. In these circumstances, the defendants would not have

anticipated being haled into court in Florida.  The Middle District of Florida does not have either general or specific jurisdiction over the defendants.  The defendants are, however, subject to the jurisdiction of this Court by virtue of being domiciled here.  The alleged breach of the contract occurred in Nebraska.

The defendants' only suit-related contacts with the State of Florida were several telephone conversations with Verséa employees, ordering products for delivery in Nebraska.  GS Labs's operation of a testing site in Orlando for five weeks in November and December 2021 (which was permanently closed in December 2021) pre-dated the defendants' contacts with Verséa, which did not start until January 2022.  The operation of that site had no connection to the defendants' purchase of the products at issue.

This Court may not transfer this case back to Florida under §§ 1404(a) and 1406(a) because the Middle District of Florida is not a district where the action might have been brought.  These defendants are not subject to personal jurisdiction there and the action could not have been filed there.  Accordingly,

IT IS ORDERED that the plaintiff's motion to transfer venue (Filing No. 27) is denied.

Dated this 18th day of July, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge